CLIFFORD BAIR C 95079
L3 346 P.O. BOX 600
TRACY, CALIFORNIA 95378 0600

MAY 1st 2008

**FILED**

MAY 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD BAIR            [
PETITIONER               [
V.                       [          CASE NO.# CV 08 1289 JSW PR
CLUDE FINN, WARDEN       [
D.V.I. TRACY, CA         [
BOARD OF PRISON          [          JUDICIAL NOTICE REQUESTED
HEARINGS  et al          ]
RESPONDENTS              [



       PETITIONER SUBMITS THIS INCIDENT REPORT, ALONG WITH HIS
ACCOUNT OF THE INCIDENT.   THE SUPPORT LETTERS THAT HE HAS
RECEIVED TO THIS HONORABLE COURT TO KEEP THE COURT UP TO DATE ON
ALL ISSUES PERTAINING TO PETITIONER, HIS PAROLE DATE AND HIS
FREEDOM.

       PETITIONER RESPECTFULLY ASK THIS HONORABLE COURT TO TAKE
NOTICE OF THE FACT HE DID NOT LOSE HIS JOB IN THE WAREHOUSE NOR
WAS HE REMOVED FROM THE STRAIGHT LIFE PROGRAM.


       PETITIONER DECLARES UNDER PENALTY OF PERJURY THAT ALL THE
INFORMATION SUBMITTED IN THIS NOTICE IS TRUE AND CORRECT TO THE
BEST OF PETITIONERS KNOWLEDGE.

                         RESPECTFULLY SUBMITTED

                         CLIFFORD BAIR C 95079

CLIFFORD BAIR C 95079                          MAY 1st 2008
L3 346 P.O. BOX 600
TRACY, CALIFORNIA 95378 0600

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD BAIR                [
PETITIONER                   [
V.                           [          CASE NO.#_CV 08 1289 JSW PR
CLUDE FINN, WARDEN           [
D.V.I. TRACY, .CA            [
BOARD OF PRISON              [          JUDICIAL NOTICE REQUESTED
HEARINGS  et al              ]
RESPONDENTS                  [

_____

        PETITIONER SUBMITS THIS INCIDENT REPORT, ALONG WITH HIS
ACCOUNT OF THE INCIDENT. AND THE SUPPORT LETTERS THAT HE HAS
RECEIVED TO THIS HONORABLE COURT TO KEEP THE COURT UP TO DATE ON
ALL ISSUES PERTAINING TO PETITIONER, HIS PAROLE DATE AND HIS
FREEDOM.
        PETITIONER RESPECTFULLY ASK THIS HONORABLE COURT TO TAKE
NOTICE OF THE FACT HE DID NOT LOSE HIS JOB IN THE WAREHOUSE NOR
WAS HE REMOVED FROM THE STRAIGHT LIFE PROGRAM.

        PETITIONER DECLARES UNDER PENALTY OF PERJURY THAT ALL THE
INFORMATION SUBMITTED IN THIS NOTICE IS TRUE AND CORRECT TO THE
BEST OF PETITIONERS KNOWLEDGE.

                                RESPECTFULLY SUBMITTED

                                CLIFFORD BAIR C 95079

TABLE OF CONTENTS

EXHIBIT A 115 WRITE UP.

EXHIBIT B THE DISTRICT ATTORNEY REFERRAL.

EXHIBIT C  DARRYL A. SCHAPPI LETTER.
EXHIBIT D. HISTORY OF MY AD SEG STAY.

EXHIBIT E MY LETTER TO THE WARDEN, MR MOORE.
                          PHONE CONVERSATION BETWEEN VALERIE BAIRD + THE WARDEN

EXHIBIT F SUPPORT LETTERS.
     DOCTOR MANN Ph.D
     MR. J.P. HANNAH
     MR. GARY BOWER MY P.I.A. SUPERVISIOR.

EXHIBIT G AWARDS AFTER RETURNING BACK TO WORK.

EXHIBIT H FOR STRAIGHT LIFE RULES AND REGULATIONS.

     SEE SECTION #3 PAGE 9 of 14.

CONCLUSION.

PROOF OF SERVICE BY MAIL

I VALERIE BAIR NOT BEING A PARTY TO THIS ACTION. I AM OVER
THE AGE OF 18 YEARS OF AGE.

ON THIS DATE *may 15th* 2008 I HAVE SERVED A COPY OF THE
FOLLOWING DOCUMENT: CLIFFORD BAIRS JUDICIAL NOTICE REQUESTED.

BY PLACING THIS DOCUMENT IN A SEALED ENVELOPE WITH POSTAGE
PREPAID IN THE UNITED STATES MAIL IN A DEPOSIT BOX SO PROVIDED
HERE IN ROSEVILLE CALIFORNIA. ADDRESSED AS FOLLOWS:

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT ~~OF~~ CALIFORNIA
*450 GOLDEN GATE AVENUE*
*BOX 36060*
*SAN FRANCISCO, CA 94102*

OFFICE OF THE ATTORNEY
GENERAL
*MS DENISE A. YATES Esq*
*455 GOLDEN GATE AVENUE*
*SUITE 11000*
*SAN FRANCISCO, CA*
*94102 7004*

I VALERIE BAIR DECLARE UNDER PENALTY OF PERJURY THAT THE FOR
FORGOING IS TRUE AND CORRECT. THAT THERE IS DELIVERY SERVICE BY
U.S. MAIL AT THE ABOVE ADDRESS.

EXCUTED ON THIS DATE: *may 15th* 2008

SIGNED: *Valerie Bair*

EXHIBIT   A.

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| C-95079 | BAIR | | | DVI | L-345 | 08-03-22-P |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | CONTROL OF INMATE | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| 3006 (a) | MANUFACTURED WEAPON | | PIA W/H #3 | 3-18-08 | 1030 |

CIRCUMSTANCES

On Tuesday, March 18, 2008, at approximately 1030 hours, while searching P.I.A. Warehouse #3, I discovered an Inmate Manufactured Weapon in the work area assigned to Inmate BAIR, C-95079. While searching the wall next to Inmate BAIR'S work station, I found secreted behind a board, wrapped in two brown paper towels, a weapon made of flat metal stalk, measuring 5 5/8 inches in length and 2 ½ inches in width, with a 6 inch handle wrapped with masking tape. The blade of the weapon was sharpened to a cutting edge 4 ½ inches along it's length. I exposed 14 photographs utilizing digital camera, and took possession of the weapon. I escorted Inmate BAIR to the Mainline Infirmary for medical evaluation, at which time Inmate BAIR stated to me that he used the weapon to cut his vegetables and lunch meats. I then escorted Inmate BAIR to a holding tank in L-2. Inmate BAIR was later rehoused into J-340.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ► T. HARPER, SECURITY SQUAD #3 | | 3-26-08 | SQUAD #3, 2nd Watch | S/W |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|---|
| ► | | 3/24/08 | DATE 3-18-08 | LOC. L-113 | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | | |
| ☐ SERIOUS | | | | ☐ HO  ☐ SHO  ☐ SC  ☐ FC |

| COPIES GIVEN INMATE BEFORE HEARING | | | | | |
|---|---|---|---|---|---|
| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) ► | DATE 3-26-08 | TIME 1245 | TITLE OF SUPPLEMENT View 14 Photo's/ 72P1 | |
| ☐ INCIDENT REPORT LOG NUMBER: NI-Prog-08-03 | BY: (STAFF'S SIGNATURE) ► | DATE 3-26-08 | TIME 1245 | BY: (STAFF'S SIGNATURE) Sgt P. Oun | DATE 3-26-08  TIME 124 |

HEARING

SEE ATTACH D 115 PART C

| REFERRED TO  ☐ CLASSIFICATION  ☐ BPT/NAEA | | | | |
|---|---|---|---|---|
| ACTION BY: (TYPED NAME) P. Braga, Correctional Lieutenant | | SIGNATURE ► | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ► | DATE 4-1-08 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ► | DATE | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE) ► | DATE 4-16-08  TIME 112 | |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE___OF___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER-P | INSTITUTION L. | TODAY'S DATE 8-08 |
|---|---|---|---|---|

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☒ OTHER___ |

**[CONTINUATION OF CDC 115, PAGE 2]**

Photos: 1-14

1. Overall Warehouse #3
2. Entrance Warehouse #3
3. Inmate work area
4. North wall adjacent to work area.
5. Bair ID card.
6. Weapon wrapped in paper towel.
7. Weapon handle. (Close-up)
8. Weapon (Close-up)
9. Weapon, with BAIR ID.
10. Weapon, with BAIR ID
11. Close-up of Weapon with scale, and BAIR ID.
12. Close-up of Weapon with Scale.
13. Close-up of Weapon with Scale
14. Close-up of Weapon blade with Scale.

I then processed the Weapon and Photo CD-R into evidence per DVI Evidence Procedures. This concludes my involvement in this incident. Inmate BAIR is not a participant in the Mental Health Delivery System. Inmate BAIR'S reading level is above a 4.0. Positive Identification was made by State issued I.D. card. Inmate BAIR is aware of this report.

T. HARPER, Security Squad #3

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 3-26-08 | TIME SIGNED 1245 |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-95079 | BAIR | 08-03-22-P | DVI | 03/27/2008 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER: |

## HEARING PREPARATION:
This Hearing commenced on Thursday, March 27, 2008, at approximately 1720 hours. Subject was present and stated he is in good health.

## MENTAL HEALTH SERVICES DELIVERY SYSTEM:
According to Mental Health Records, Inmate BAIR **is not** a participant in the Mental Health Services Delivery Systems (MHSDS). The behavior resulting in the RVR **was not** considered bizarre, unusual, or uncharacteristic, therefore did not warrant the completion of a CDC-115MH.

## DUE PROCESS/TIME CONSTRAINTS:
Subject acknowledges receipt of all non-confidential reports relied upon in this hearing at least 24 hours prior to this hearing. Time constraints have been met in this matter.

## D.A.REFERRAL:
Inmate BAIR was advised that this matter was referred on 03/25/08 to the San Joaquin County District Attorney's Office for possible felony prosecution. He was also advised that noted by his signature on the CDC 115A he **did not** request his hearing be postponed pending outcome of the referral for prosecution. He also was advised that any information obtained during the hearing could be used during criminal proceedings, should the District Attorney accept the case. Inmate BAIR indicated he is ready to proceed with the hearing.

## STAFF ASSISTANT:
Subject **was not** assigned a Staff Assistant per CCR 3315 (d)(2), as he speaks English, he is not illiterate, the issues are not complex, nor does the inmate require a confidential relationship to prepare a defense. Subject's name was **not** inscribed on the TABE 4.0 or below list. Inmate BAIR was able to read a portion of the RVR to this Senior Hearing Officer.

## INVESTIGATIVE EMPLOYEE:
Subject **was not** assigned an Investigative Employee per CCR 3315(d)(1). The SHO determined that additional information was not warranted to conduct a fair hearing.

## WITNESSES:
Inmate BAIR **did not** request the presence of witnesses for the hearing.

The Reporting Employee **was not** requested and **was not** present at this hearing.

## DEFENDANT'S PLEA & STATEMENT:
The charge was read to Inmate BAIR, he pled NOT GUILTY. Inmate BAIR is charged with a violation of CCR 3006(a) for the specific act of "Control of a Deadly Weapon", a Division "A-1" offense.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| F. Braga, Correctional Lieutenant | 03/27/2008 |

| ☒ COPY OF CDC-115 GIVEN TO INMATE | GIVEN BY STAFF SIGNATURE: | DATE SIGNED 4-11-08 | TIME SIGNED 1120 |

CDC-115-C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-95079 | BAIR | 08-03-22-P | DVI | 03/27/2008 |

| ☐ SUPPLEMENTAL | ☐CONTINUATION OF | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER: |
|---|---|---|---|---|---|

Inmate BAIR stated, "It is a vegetable cutter that I used to cut vegetables and eggs to make sandwiches. I didn't make it. I have no idea who made it. It was there in my area when I was assigned to PIA in July 2005. All I'm guilty of is using it off and on since I found it."

## CONFIDENTIAL INFORMATION:
Confidential information was not part of the evidence considered by the SHO in this hearing.

## FINDINGS:
Inmate BAIR is found NOT GUILTY of the specific act of "Control of a Deadly Weapon". Subject is however found **GUILTY** of violating an included/lesser included charge of CR 3006(a), by the specific act of "Control of Dangerous Contraband", a Division "C" offense. The preponderance of evidence substantiates the charge. The evidence and documents relied upon were:

1. Contents of the Rules Violation Report, CDC-115, log # 08-03-22-P, authored by Correctional Officer T. Harper states in part, "On Tuesday, March 18, 2008, while searching P.I.A. Warehouse #3, I discovered an Inmate Manufactured Weapon in the work area assigned to Inmate BAIR, C-95079. While searching the wall next to Inmate BAIR's work station, I found secreted behind a board, wrapped in two brown paper towels, a weapon made of flat metal stalk, measuring 5 5/8 inches in length and 2 ½ inches in width, with a 6 inch handle wrapped with masking tape."

2. The CDCR 837C authored by Correctional Officer T. Harper states in part, "I escorted Inmate BAIR to the Mainline Infirmary for medical evaluation, at which time BAIR stated to me that he used the weapon to cut his vegetables and lunch meats."

3. The evidence, five (5) photographs depicted an item made of flat metal stock, measuring approximately 5 ½ inches in length by approximately 2 ½ inches in width, with a 6 inch handle along the length, wrapped with masking tape. The SHO observes that based on the handle being attached to the length of the item, that it was likely used as the Subject claimed, for cutting vegetables, and not as a slashing or stabbing weapon.

4. Inmate BAIR partial admission of guilt during testimony in the hearing wherein he stated, "All I'm guilty of is using it off and on since I found it."

## DISPOSITION:
Inmate BAIR is assessed 120 days forfeiture of credit.

Inmate BAIR was counseled and reprimanded regarding future program expectations.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | F. Braga, Correctional Lieutenant | 03/27/2008 |
| ☒ COPY OF CDC-115 GIVEN TO INMATE | GIVEN BY STAFF SIGNATURE:  DATE SIGNED  4-11-08 | TIME SIGNED  1120 |

CDC-115-C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-95079 | BAIR | 08-03-22-P | DVI | 03/27/2008 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF | ☐ 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER: |
|---|---|---|---|---|---|

The contraband item will be retained by the Investigative Services Unit pending outcome of the District Attorney referral."

## ADVISEMENT OF RIGHTS:

Subject was advised that he would be issued a final copy of the RVR, after audit by the Chief Disciplinary Officer.

Subject was advised of his right, and the procedure for, appeal of this action as outlined in CCR 3084.1.

Subject was advised that credits forfeited on a Division C offense are not restorable.

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | F. Braga, Correctional Lieutenant | | 03/27/2008 |
| ☑ COPY OF CDC-115 GIVEN TO INMATE | GIVEN BY STAFF SIGNATURE: | DATE SIGNED: 4-11-08 | TIME SIGNED |

CDC-115-C

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER C-95079 | INMATE'S NAME BAIR | VIOLATED RULE NO(S). 3006 (a) | DATE 3-18-08 | INSTITUTION DVI | LOG NO. 08-03-22-P |
|---|---|---|---|---|---|

| REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT | ☒ YES | ☐ NO |
|---|---|---|

## POSTPONEMENT OF DISCIPLINARY HEARING

| ☒ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ Bair C. | DATE 3-26-08 |
|---|---|---|
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ N/A | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION N/A |
|---|---|

| ☐ I REVOKE my request for postponement. | INMATE'S SIGNATURE ▶ N/A | DATE |
|---|---|---|

## STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED    ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ N/A | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF N/A |
|---|---|---|
| ☒ NOT ASSIGNED | REASON Above 4.0 Does not meet durien few CCR 3315 G(12) | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☐ REQUESTED    ☒ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ Bair | DATE 3-26-08 |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF N/A |
|---|---|---|
| ☐ NOT ASSIGNED | REASON N/A | |

| EVIDENCE/INFORMATION REQUESTED BY INMATE: | NONE |
|---|---|

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

| ☐ REPORTING EMPLOYEE | ☐ STAFF ASSISTANT | ☐ INVESTIGATIVE EMPLOYEE | ☐ OTHER _____ | ☒ NONE |
|---|---|---|---|---|

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| NONE | ☐ | ☐ | NONE | ☐ | ☐ |
| N/A | ☐ | ☐ | N/A | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▶ N/A | DATE |
|---|---|---|
| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME 1245 | DATE 3-26-08 |

CDC 115-A (7/88)                    — If additional space is required use supplemental pages —

OSP 03 7484

EXHIBIT   B.

L 346

NAME AND NUMBER  Bair C95079    CDCR 128-B

On 3/18/08 you were involved in an incident, and in violation of section 4502 of the Penal
Code. On 3/25/08 your case was referred to the Criminal Authority for possible prosecution.
On 4/1/08 notice was received that the Criminal Authority (Accepted)/ Declined to prosecute
this case. On 4/2/08 the Criminal Authority dismissed the case in the interest of justice.

Original:  Central File
Cc:        Inmate
           Incident File
           Hearing Lieutenant

B. Landingham
Investigative Lieutenant
Investigative Services Unit

DATE: 4 - 2 - 2008         DVI - PRG - 08 - 03 - 0086

EXHIBIT   C.

To Whom it may concern;                    PG 1 of 3

I am submitting this letter on behalf of inmate CLIFFORD L. BAIR, (C95079). I have known BAIR since March of 1998. Throughout those ten (10) years we have worked closely together. First, for seven (7) years in the old Folsom P.I.A. welding shop and for approximately the last three (3) years in warehouse #3 here in the P.I.A. at D.V.I.

During the years I have known BAIR I have seen him interact with many inmates and staff alike. He has always been very respectful and courteous to everyone. This is a quality he is well known for. I have seen him communicate with people who were confrontational and unreasonable and he was always able to get them to listen to reason and common sense, WITHOUT ANY USE OF FORCE OR THREAT OF VIOLENCE. While working in places like welding shops and warehouses there are many items that could be used as a weapon, however, I have never seen BAIR possess or say that he would ever need anything of that nature.

Inmate BAIR and I have talked many times about the importance of

POSITIVE PROGRAMMING, GOOD CONDUCT, ETC
IN ORDER TO OBTAIN HIS RELEASE FROM
PRISON THAT I BELIEVE HE RICHLY DESERVES.
HE SPEAKS OFTEN OF JOINING HIS WIFE
IN THE FREE WORLD AND LIVING OUT THEIR
LIVES TOGETHER IN A CONSTRUCTIVE AND
PEACEFUL MANNER.

DURING THE THREE (3) YEARS THAT WE
HAVE BEEN HERE AT DVI, I HAVE NOTICED
THAT BAIR HAS EXPERIENCED SOME DENTAL
PROBLEMS INCLUDING THE LOSS OF SOME
TEETH. HE HAS USED THIS ITEM IN QUESTION,
"FOOD DICER", TO CUT UP VEGETABLES, FRUITS,
ETC SO HE CAN EAT THEM. TO THE BEST OF
MY KNOWLEDGE THIS ITEM HAS BEEN IN THE
WAREHOUSE SINCE BEFORE I STARTED WORKING
THERE IN MAY OF 2005. IT HAD NEVER
OCCURED TO US THAT THIS ITEM WOULD
CREATE SUCH A PROBLEM SINCE NEITHER ONE
OF US HAS EVER ENTERTAINED ANY THOUGHTS
OF MAKING OR POSSESSING A WEAPON OR
ANY SUCH CONTRABAND.

I HOPE THIS LETTER WILL SHOW THE
TRUE CIRCUMSTANCES AND INTENTIONS OF
INMATE BAIR. I BELIEVE WITH ALL DUE
RESPECT THAT THIS INCIDENT HAS BEEN
ELEVATED OUT OF PROPORTION, PARTICULARLY
SINCE THERE WAS NO EVIL INTENTION

PG 3 OF 3

ON THE PART OF INMATE BAIR IN KNOWING
THIS ITEM WAS THERE. ADDITIONALLY, HIS
ACTIONS OVER THE YEARS HAVE SHOWN HE
IS FOCUSED ON POSITIVE THINGS IN ORDER
TO OBTAIN HIS FREEDOM. BAIR IS AN ASSET
TO OTHERS AND I BELIEVE HE WILL CONTINUE
TO BE WHEN HE IS RELEASED FROM PRISON.

RESPECTFULLY SUBMITTED,    DATE: 3 APRIL, 2008

DARRYL A. SCHLAPPI
E84521       L335

EXHIBIT    D.

HISTORY OF MY AD SEG STAY FROM 3-18-2008 TO 3-27-2008.
THIS STATEMENT WRITTEN AND RECORDED 3-31-2008 BY
CLIFFORD BAIR C 95079 L3 346 D.V.I. TRACY, CALIFORNIA

THE SECURITY SQUAD CAME OUT TO WAREHOUSE #3 WHERE I HAVE
WORKED SINCE 7-2005. IT WAS C/O CERNA, C/O HARPER AND A SERGEANT
WITH 10 TO 15 CADETS FROM THE CDCR. THEY WENT INTO WAREHOUSE #3
AND APPROXIMATELY 3 FEET FROM MY LOCKER FOUND A DICER THAT I
ADMITTED TO USING TO CUT UP VEGETABLES, MEATS AND BOILED EGGS
WITH TO MAKE SANDWICHES OUT OF. THIS DICER WAS ON THE WALL
WRAPPED IN PAPER TOWELS. IT WAS BEHIND A PIECE OF WOOD.

THE SQUAD SERGEANT CAME OUT OF WHSE #3 AND MOTIONED TO ME
TO COME OVER TO HIM. AS I DID C/O CERNA OF THE SQUAD CAME UP TO
ME AND ASKED ME ABOUT THE WEAPON THAT HAD BEEN FOUND
I TOLD HIM I HAD USED IT TO CUT UP TOMATOES. HE ASKED ME IF IT
WAS SHARP ON THE END, I SAID YES. HE ASKED ME IF IT COULD CUT
SOMEONE, I SAID YES. HE TOLD ME TO TURN AROUND AND HE PUT HAND_
CUFFS ON ME AND ESCORTED ME TO THE CLINIC.

IN THE CLINIC I WAS ASKED BY A NURSE IF I HAD EVER ATTEMPTED
SUICIDE AND I SAID NO. SHE TOOK MY VITAL SIGNS, (137 over 73).
C/O CERNA ASKED ME IF I HAD EVER ATTEMPTED SUICIDE, I SAID NO.
HE ASKED ME IF I HAD A "R" SUFFIX ON MY JACKET, (C-FILE), I SAID
NO.

I WAS THEN ESCORTED TO A HOLDING CAGE IN HOUSING UNIT L2.
AFTER A COUPLE OF HOURS IN THIS CAGE, A SERGEANT CAME AND HAD ME
SIGN SOME PAPERS. HE SAID IT WAS NOT AN ADMISSION OF GUILT. I WAS
THEN ESCORTED TO HOUSING UNIT J3-140. THIS WAS ON 3-18-08.

ON 3-19-08 I WAS SEEN BY CAPTAIN WOODS. HE TOLD ME I WOULD
BE GOING TO ICC ON 3-26-08, TO FIND OUT WHAT WAS GOING TO HAPPEN
TO ME. HE GAVE ME A COPY OF SOME PAPERWORK. I TOLD HIM I USED THIS
CUTTER TO CUT VEGETABLES WITH. I SAID I DID NOT MAKE THIS CUTTER
IT WAS NOT MINE. AS FAR AS I KNOW IT HAS BEEN IN WHSE #3 SINCE
I WENT TO WORK THERE IN JULY OF 2005. CAPTAIN WOODS TOLD ME NOT
TO TRY TO PUT THIS OFF ON ANYONE ELSE. I TOLD HIM I WOULDN'T DO
THAT. I SAW CAPTAIN MOORE THAT EVENING AND SHE GAVE ME THE SAME

/.

INFORMATION.

ON 3-19-2008 I WAS MOVED TO AD SEG CELL L1 113.

ON 3-21-2008 DOCTOR SHERMAN Ph.D ONE OF THE STATE
PSYCHOLOGIST CAME BY TO SEE ME. HE SAID HE WAS IN THE WARDENS OFF
ICE WHEN HE HEARD THAT I HAD BEEN PLACED IN AD SEG. I KNOW DOCTOR
SHERMAN FROM A CLASS THAT HE AND DOCTOR MANN Ph.D HAD IN 2006,
THAT I ATTENDED FOR APPROXIMATELY 6 MONTHS AND COMPLETED.
HE SAID THAT HE TOLD DOCTOR MANN WHERE I WAS AND WHAT HAD HAPPEN.
HE ASK ME IF I WAS OKAY, AND I SAID I WAS. HE SAID THAT DOCTOR
MANN WOULD BE SEEING ME SOMETIME THAT AFTERNOON. I THANKED HIM
FOR HIS CONCERN FOR ME AND ESPECIALLY FOR COMING BY TO SEE ME.
HE TOLD ME TO TAKE CARE AND ASSURED ME THAT EVERYTHING WAS GOING
TO BE OKAY.

ON 3-21-2008 APPROXIMATELY AN HOUR AFTER DOCTOR SHERMAN LEFT
THE WARDEN CAME BY. HE ASK ME HOW I WAS AND I SAID I WAS SORRY
AND THAT I WAS OKAY. HE SAID THAT I WOULD HAVE MY ICC HEARING ON
3-27-2008 BECAUSE HE WOULD NOT BE HERE ON THE 26th. HE SAID THAT
HE WANTED TO HERE FOR MY HEARING SO THAT HE COULD GET THE CHARGES
AGAINST ME REDUCED. HE ASK ME HOW COULD I HAVE BEEN SO STUPID,
I TOLD HIM I WAS SORRY.

ON 3-21-2008 APPROXIMATELY 3 HOURS LATER I WAS TAKEN OUT OF
MY CELL TO AN OFFICE WHERE DOCTOR MANN WAS WAITING. WE BOTH HAD
TEARS IN OUR EYES, SHE ASK ME HOW I WAS DOING. I SAID I WASNT DOING
VERY GOOD. SHE ASK ME IF I WAS GOING THROUGH THE SAME EMOTIONS
THIS TIME AS I DID WHEN I RECEIVED MY LAST 3 YEAR DENIAL, I SAID
I WAS, ONLY WORSE. SHE SAID WHAT DOESNT KILL US MAKES US STRONGER.
I TOLD HER ABOUT HOW HEARTBROKEN I WAS FOR PUTTING MY WIFE THROUGT
THIS MESS. I SAID THIS HAS BEEN COMPLETELY BLOWN UP TO BE 1000
TIMES WORSE THAN IT EVER SHOULD HAVE BEEN. SHE SAID SOMETIMES LIFE
ISNT FAIR. I TOLD HER THAT I DIDNT MAKE THIS CUTTER, THAT IT
WASNT MINE, YES I USED IT TO CUT VEGETABLES AND MEATS AND BOILED
EGGES TO MAKE SANDWHICHES OUT OF, THATS ALL. I SAID AS FAR AS I
KNEW THIS CUTTER HAD BEEN IN THE WAREHOUSE FOR AS LONG AS I HAVE
WORKED OUT HERE 7-2005.

I TOLD DOCTOR MANN HOW MUCH I WANTED TO CONTINUE WITH MY STRAIGHT LIFE PROGRAM ONCE I WAS RELEASED FORM AD SEG. I TOLD HER ABOUT THE RULES WHEN ANYONE IN THE PROGRAM RECEIVES A 115. THEY ARE REMOVED FROM THE PROGRAM FOR 6 MONTHS TO ONE YEAR. SHE SAID SHE WOULD DO ALL SHE COULD TO HELP ME SAVE MY PROGRAM. SHE ASK ME WHAT KIND OF BOOKS THAT I LIKED TO READ. ON 3-24-2008 SHE BROUGHT ME TWO BOOKS.

ON 3-25-2008 DOCTOR MANN BROUGHT ME TWO MORE BOOKS. SHE SAID SHE HAD TALKED TO ONE OF THE SPONSORS OF THE STRAIGHT LIFE PROGRAM, A MRS. JENNIFER MALONEY. SHE SAID THAT BEFORE ANY DECISION COULD BE MADE ABOUT MY RETURN TO THE PROGRAM THE WRITE-UP CONCERNING ME WOULD HAVE TO BE CONFIRMED, NOTHING WOULD BE DONE UNTIL THEN.

3-27-2008 I WAS ESCORTED TO K WING FOR MY ICC HEARING. THE WARDEN MR. MOORE WAS THERE ALONG WITH 6 OTHER INDIVIDUALS WHO WERE ON THE PANEL. ONE OF THE PANEL MEMBERS SAID THAT HE WAS RECOMMENDING A SHU PROGRAM. MR. MOORE SPOKE UP AND SAID THAT HE WANTED THE CHARGES REDUCED TO DANGEROUS CONTRABAND AND THAT I WAS TO BE RELEASED FROM AD SEG TODAY. HE TOLD ME THAT I WOULD HAVE TO SPEAK TO MISS YOLANDA OUT AT P.I.A. CONCERNING GETTING MY JOB BACK AND THAT I WAS GOING TO HAVE TO DEAL WITH TAKING CARE OF THIS 115. I WAS EXCUSED FROM THE HEARING.

3-27-2008 AT APPROXIMATELY 2:30 p.m. I WAS RELEASED FROM AD SEG AND TAKEN TO C WING CELL 140. AT 3 p.m. DOCTOR MANN CAME TO SEE ME. SHE SAID THAT SHE WAS STILL CHECKING ON MY STRAIGHT LIFE PROGRAM, BUT SHE WAS AFRAID THAT I WAS GOING TO HAVE TO BE SUPENDED FOR 6 MONTHS, SHE SAID FOR ME NOT TO GIVE UP I AS OF TODAY STILL HAD MY PROGRAM.

AT 6 P.M. I HAD MY 115 HEARING AND I PLEADED NOT GUILTY WITH AN EXPLAINATION. PLEASE SEE EXHIBIT A FOR THE WRITE UP AND THE 115 HEARING.

3-27-2008 AT 9 p.m. I WAS MOVED BACK TO MY ORIGNAL CELL IN L3 346.

ON 3-27-2008 I WAS ON THE DAILY MOVEMENT SHEET (DMS) AS MOVING FROM AD SEG L1 113 TO C WING 140 AND I WAS LISTED AS BEING ASSIGNED TO MY REGULAS JOB OUT AT THE P.I.A. WAREHOUSE #3. MONDAY WAS A HOLIDAY, SO I ACTUALLY RETURNED TO MY JOB ON 4-1-2008 IN WAREHOUSE #3. I THANKED MR. DAVID AUSTIN, ONE OF MY SUPERVISIORS FOR ALL THAT HE DID FOR ME TO HELP ME KEEP MY JOB. I THANKED MISS YOLANDA FOR NOT GIVING UP ON ME. I SAW THE WARDEN AND I THANKED HIM FOR ALL OF HIS CONCERN AND SUPPORT FOR ME.

ON 4-2-2008 I TALKED TO THE WARDEN AGAIN. HE ASK ME IF I WAS A HARD LEVEL 3 AND I SAID I WAS. HE SAID THAT IF I WAS PUT UP FOR A TRANSFER THAT HE WOULD KEEP ME HERE WITH AN OVER-RIDE. I THANKED HIM FOR THAT AND FOR GETTING ME IN TO SEE THE DENTIST.

ON 4-4-2008 I CALLED DOCTOR MANN FROM WORK TO ASK HER IF SHE HAD RECEIVED MY LETTERS. SHE WAS NOT IN HER OFFICE.

ON 4-4-2008 DOCTOR MANN CAME TO SEE ME IN L3. SHE SAID THAT SHE HAD NOT RECEIVED MY LETTERS TO HER OR THE WARDEN. I GAVE HER COPIES OF THE LETTERS THAT I HAD AND SHE SAID THAT SHE WOULD GET COPIES MADE FOR ME. SHE SAID THERE WAS STILL NO NEWS ABOUT MY STRAIGHT LIFE PROGRAM, BUT NO NEWS WAS GOOD NEWS

ON 4-8-2008 I MAILED OUT COPIES OF DARRYL SCHAPPIS LETTER CONCERNING ME AND THE CUTTER TO THE WARDEN AND TO DOCTOR MANN THAT PROVES THAT THIS CUTTER WAS IN THE WAREHOUSE BEFORE I WENT TO WORK IN THE WAREHOUSE. SEE EXHIBIT C.

SEE EXHIBIT H FOR THE STRAIGHT LIFE RULES, REGULATIONS AND PROCEDURES.

ON 4-13-2008 there was a straight life food sale here at the PRISON. I WA NOT AWARE THAT I WAS SUPPOSE TO WORK THIS FOOD SALE AND IN ORDER TO WORK ANY OF THE STRAIGHT LIFE PROGRAMS YOU HAVE TO BE A MEMBER IN GOOD STANDING. AT 9a.m. ON 4-13-2008 I WAS CALLED DOWN TO THE DINNING HALL BY THE STRAIGHT LIFE SUPERVISIOR. BY MRS JENNIFER MALONEY. WHEN I ARRIVED AT THE DINNING HALL, MRS MALONEY ASK ME IF I WAS READY TO GO TO WORK, I SAID I WAS.

DURING THE WEEK OF THE 20th THERE WAS A MEETING OF THE
STRAIGHT LIFE MEMBERS AND TWO SPONSORS. AT THIS MEETING MRS
MALONEY SAID THAT SHE HAD READ THE 128 THAT I HAD RECEIVED AND
THAT SHE DIDNT SEE ANYTHING IN THAT WRITE UP THAT WOULD KEEP ME
OUT OF THE PROGRAM. AT THIS MEETING I WAS VOTED IN-TO THE STRAIGHT
LIFE PROGRAM AS A FULL MEMBER.

AS OF 5-5-2008 I HAVE NOT BEEN RECLASSIFIED NOR HAVE I BEEN
PUT UP FOR TRANSFER DUE TO THE INCREASE IN CLASSIFCATION POINTS
THAT I WOULD HAVE RECEIVED WITH THIS 115 WRITE UP.

I CLIFFORD BAIR DECLARE UNDER PENALTY OF PERJURY THAT ALL OF THE
PAGES 1 THROUGH 5 ARE TRUE AND CORRECT TO THE BEST OF MY
KNOWLEDGE.

EXCUTED ON THIS DATE  _5/5/2008_

SIGN: CLIFFORD BAIR _Clifford Bair_

EXHIBIT   E.

MR MOORE
WARDEN
D.U.I. TRACY, CA                                          3/31/08

DEAR MR MOORE,

    SIR, I WANT TO THANK YOU FOR ALL OF YOUR HELP
AND CONCERN FOR MY WIFE AND I SINCE OUR ARRIVAL HERE
ON MARCH 5TH 2005, AND ESPECIALLY FOR REACHING OUT TO
ME DURING THIS HORRIBLE INCIDENT THAT TOOK PLACE ON
MARCH THE 18TH 2008, WHERE I WAS ARRESTED AND TAKEN
TO ADMINISTRATIVE SEGREGATION FOR BEING IN CONTROL
OF AN INMATE MANUFACTURED WEAPON.
    DURING MY 115 HEARING 3/27/2008, I PLEADED GUILTY
TO THE DANGEROUS CONTRABAND WITH AN EXPLANATION. I
EXPLAINED TO LT BARAGA, THAT I DID NOT MAKE THIS
VEGETABLE CUTTER, IT WAS NOT MINE, AS FAR AS I KNOW
IT HAS BEEN IN THE WAREHOUSE SINCE I WENT TO WORK
OUT THERE IN JULY OF 2005. I AM GUILTY OF USING
THIS CUTTER TO CUT UP VEGETABLES AND MEATS AND BOILED
EGGS TO MAKE SANDWICHES OUT OF, THATS ALL.
    I ALSO WANT TO APOLOGIZE TO YOU FOR MY EMOTIONAL
BREAK DOWN THAT I HAVE HAD.
    FIRST, I HAD SURGERY ON THE 20TH OF FEBRUARY FOR AN
ONGOING PROSTATE PROBLEM THAT I HAVE HAD FOR OVER 5 YEARS
NOW, OF CONSTANTLY HAVING TO GO TO THE BATHROOM,
THAT HAS NOT HELPED MY PROBLEM.

1

I Received Notice on, I Believe It was March 7th That My Father Has Passed Away. With This Incident All But Going My Wife And I Life Without Parole After Being Incarcerated For Over 24 Years, I'm Sure You Can See How My Emotions Can Be A Little Over The Top, To Say The Least.

Sir, I Apologize To You And The Entire Staff Here At D.V.I. For This Entire Incident.

Sincerely Yours

Clifford Bair
C95079 L3 3-16

2

To Whom It May Concern:

On approximately Thursday or Friday the 20th or 21st of March 2008 I called Warden Moore in regards to my husband , Clifford Bair C95079, being put into Administrative Segregration stemming from an incident at Warehouse 3 where my husband works.

I was in a panic, knowing that my husband would never do anything to destroy our chances of ever coming home. Warden Moore told me he didn't believe that my husband made a weapon. Warden Moore said that if my husband had wanted a weapon, that he didn't have to make one when there were screwdrivers and other tools out there that could be used as a weapon.

Warden Moore said that the article that had been found appeared to be a vegetable cutter, and while that in itself was not a weapon, it was a foolish mistake by my husband to have used it or to have knowledge of it.

I told Warden Moore that a 115 would destroy my husbands chances to come home when he came before the Parole Board at his next hearing. Warden Moore said he could have this charge reduced to possession of dangerous contraband instead of an inmate manufactured weapon. Warden Moore told me not to worry, that he could see to it that the charge was reduced. Warden Moore stated that he wanted to attend my husbands I.C.C. hearing, so much so, that he had my husband moved to another unit so that his hearing would be on a day that he could attend.

Warden Moore left me with the impression that my husband would get a 128 and not a 115. Warden Moore told me that he could not make this go away completely saying that it would not look good for my husband to get off scott free because of the way it would look to the other inmates.

Warden Moore assured me that my husband would not be railroaded. I feel as if the opposite has happened. My husband confessed to using the vegetable cutter to cut up vegetables, lunch meats, and eggs. This vegetable cutter was not my husbands nor did he make it.

Sincerely

*Valerie Bair*

Valerie Bair

EXHIBIT   F.

Doctor Mann Ph.D.
Psychologist
D.U.I. Tracy, CA

Dear Doctor Mann,

I know how busy your schedule is. So I am writing to you enstead of asking for an appointment

Enclosed is a copy of the letter I wrote to the Warden. What I would like from you is a few words about me and my character that you personally know before this horrible incident happen. How you feel about me as it relates to this incident, now.

Last, but most importantly. I want to thank you for all of your understanding and support for me before this awful ordeal, your concern and support for me during this ordeal, and today. Doctor Mann I thank you so much.

If you want to talk to me in person, I will be more than happy to meet with you.

Sincerely Yours

Clifford Bair
C 95079 L3 346

| Deuel Vocational Institution | GENERAL MENTAL HEALTH CHRONO | | Department of Corrections and Rehabilitation | | |
|---|---|---|---|---|---|

| Number | C95079 | Last | Bair | First | Clifford | House | Date | 4/25/08 | DVI |
|---|---|---|---|---|---|---|---|---|---|

Mr. Bair (C95079) was seen by mental health when we was placed in Ad Seg during mid-March. In the past, he had referred himself to mental health for assistance with coping skills though, he does not meet criteria for the mental health system. I came to know Mr. Bair in November of 2006 when I completed his Evaluation for his Board of Parole Hearings. At that time, I found him to be sincere in his remorse of his crime and to demonstrate true insight. His assessment of dangerousness was seen as below average in comparison to other inmates. Considering this, it was a surprise to hear that he had been put in Ad Seg for possession of a sharp object. In his words, "I got too comfortable here, I forgot where I was." Reporting that he had been using the tool to chop his food, due to his dental impairments. As a result, Mr. Bair was written up for the offense and handled the consequences with grace. He thanked all individuals personally who had advocated for him: during classification, for his job placement and eventual return to the Straight Life Program. The shear number of people, as well as the seniority of his advocates, speak to Mr. Bair's character and reputation. I am well aware that Mr. Bair broke the rules when he was in possession of the sharp object and he took full responsibility for this act. However, I am commending him for his behavior during this stressful time. He demonstrated self care, respect and sincere appreciation of those around him.

H. Mann, Ph.D.

CDC Psychiatric 128C

4-15-08

Jean-Paul Hannah
1126 Glenhurst Dr,
Lodi  CA 95240

Warden, Deuel Vocational Institute,
To Whom it may concern,
        Dear Sir,
                this letter is being written regarding
Clifford Bair, inmate # C95079 , currently incarcerated
at the DVI facility. I have had involvement with Mr Bair
through the Straight Life program and through volunteer work
with the Narcotics anonymous program. My experience with
Mr Bair has shown him to be honest, truthful, caring and a
man of integrity. It is my understanding that he was charged with
possession of contraband and removed from the straight life
program. My concern is NOT the charge, but rather the removal
of Mr Bair from the SLP. In my opinion, this would be a
mistake to take a man dedicated to the success of our troubled
youth from a program where he trully makes a difference. Surely
the CDCR can avoid the loss of this integral member of the
Straight Life team and recognizing the needs of the many over
the punishment of one??
        I look forward to your response to this request and I am
confident you will do the right thing. Making a difference in the
life of a child, especially a troubled child, is not only incredible,
but also rare. Please help my students, their families and the
DVI Straight Life program — re-instate Mr Bair.

            Thank you for your consideration
                in this matter,
            Yours sincerely,
                JP Hannah, Teacher, Henderson CDS

4/10/08

To whom it may concern,

This letter is in reference to the incident in which inmate Bair C-95079, was removed from his work site as the P.I.A. warehouse on Tuesday, March 18th 2008.

The security squad, in a search of all areas of P.I.A., discovered a metal implement in the warehouse the inmate Bair works in.

The instrument was made of metal, fashioned to use as chopping tool. Inmate Bair did admit to using the tool. However, claims the piece of metal was there prior to his arrival at the warehouse as an employee of the P.I.A. warehouse.

Inmate Bair is in his sixties in age and possess limited teeth in his mouth. As such, used the implement as a tool to cut up vegetables for consuption. It is my belief that this was his sole intent.

I'm my tenure at the P.I.A. warehouse.
Approximately 1 year and 4 months.
I have observed inmate Bair to be
hardworking, respectful in his dealings
with staff and inmates.

I believe that inmate Bair is doing
his very best to demonstrate his
worthiness for consideration for release
from prison, through his history of
good behavior and continues to abide
by rules set forth within our work area.

With respect, I submit this letter as
my personal opinion and professional
observance, That consideration be
given to inmate Bair in regard to
appeal in this incident

respectfully submitted

G. A. BOWERS
IWOS P.I.A. Warehouse

EXHIBIT   G.



# SAFETY AWARD



PIA

*Prison Industry Authority*

commends

*Clifford Bain*

In compliance with the State of California and Prison Industry Authority
we congratulate the above recipient for completing **Shop Safety** training

April 7, 2008
Date:

PIA Manager

Superintendent II

Supervisor

Safety Coordinator

# MSDS COMMUNICATION AWARD



## Prison Industry Authority

### COMMENDS

*Clifford Bair*

In compliance with State of California and Prison Industry Authority we congratulate the above recipient for completing the **MSDS Communication** training.

Superintendent II
PIA Manager

Safety Coordinator
Supervisor



April 7, 2008
Date



EXHIBIT   H.

State of California                                                          Depart     of Corrections AND rEHABILITATION

# Memorandum

Date    : January 1, 2006

To      : CLAUDE E. FINN
          Warden

From    : Deuel Vocational Institution, Tracy, CA  95378

Subject : **STRAIGHT LIFE PROGRAM RULES, REGULATIONS AND PROCEDURES**

Contained within this packet are the rules and regulations for the operations of the Straight Life Program.  Herein you will find:

1) Descriptions of rules and infractions, their penalties and the manner of their application.

2) Scope, duties and responsibilities of each committee.

3) Job descriptions of all Executive Positions and criterion that must be met to be elected to each.

4) Decree's from the Sponsor, that apply to all Straight Life Program functions, their roles in S.L.P. business and the Candidate Mentor Program.

5) Business Meeting (proper conduct, and methods).

6) Session and Tour procedures.

7) Dress requirements.

8) Procedures for request for leave of absence for members.

**It is mandatory to read and understand the contents herein prior to membership and/or Sponsor participation.**


CLIFF FRAZIER
Straight Life Program Sponsor


Approved/Disapproved


CLAUDE E. FINN
Warden


CC:    Sponsor
       Co-Sponsors
       Straight Life Members
       Straight Life Candidates
       CRM
       File

January 1, 2006

## *Article VII* ELECTIONS

Section 1    Elections for Executive Body positions will be conducted at the second Business Meeting of January.

Section 2    Candidates must be a member in good standing for at least six months.

Section 3    The election will be conducted by the Vice-Chairman by secret ballot.

Section 4    The term of office will be for one (1) year.

Section 5    An Executive Officer shall not hold a position for more than three consecutive terms.

## SPECIAL ELECTIONS

Special elections will be held as the need arises and will be conducted in accordance with Article VII, Sections 2, 3 and 5 of this By-Laws.

## RECALL VOTE

Section 1    An Executive Body member may be subject to recall by a MAJORITY vote of the general membership and approval of the Sponsor.

Section 2    The recall vote will be conducted in the same manner as an election. The vote will be conducted by secret ballot.

## Article VIII RULE INFRACTIONS

Section 1    The following may result in disciplinary action:

    A.  Failure to comply with the rules as put forth in the By-Laws or direct instructions of a Sponsor/Co-Sponsor.
    B.  Challenging the authority of the appointed leadership of the session, meeting, etc.

Note:    The Sponsor/Co-Sponsor is not bound by the Straight Life By-Laws when exercising disciplinary duties. Those duties are covered by Institutional Policy.

## PENALTIES

Note:    The penalties listed below are **minimums**. The Sponsor can impose the maximum penalty on the first violation. Violations will be dropped if no further violations occur within a two-year period.

Section 1    1st Violation    A minimum of thirty (30) days suspension and ninety (90) days probation.

        2nd Violation    Ninety (90) days (or longer) suspension 180 days probation or expulsion from the group.

        3rd Violation    Expulsion from the group.

Section 2    A person expelled from the group may submit an application after six (6) months, unless otherwise stated. The application will be considered provided the meets all the entrance requirements as set forth in the By-Laws. If approved, he will be placed on one-hundred-eighty (180) days probation.

## C.D.C. 115s

Section 3    A member pending a C.D.C. 115 will be suspended until adjudication. If the member is found guilty, the following is the minimum that will apply:

## CONCLUSION

PETITIONER HAS SUBMITTED HIS WRIT TO THIS HONORABLE COURT
SO THAT THIS COURT CAN MAKE A DECISION CONCERNING HIS RELEASE
DATE AND HIS FREEDOM. WHATEVER THE DECISION IS THAT IS HANDED
DOWN, PETITIONER WANTS THIS COURT TO HAVE ALL THE AVAILABLE
INFORMATION.

PETITIONER SUBMITS THIS INFORMATION TO THIS HONORABLE COURT,
HAVING FAITH IN THE JUSTICE SYSTEM, BELIEVING THAT WHEN ALL THE
INFORMATION IS VIEWED IN THE TRUE CIRCUMSTANCES, THIS HONORABLE
COURT WILL SEE THIS INCIDENT FOR WHAT IT HONESTLY IS.

1. YES, PETITIONER USED THIS "TOOL" TO CUT UP FOOD WITH.

2. WHEN ASKED BY THE SECURITY SQUAD ABOUT THIS "TOOL", PETITIONER
   TOLD THE TRUTH.

3. THE TRUTH IS PETITIONER DID NOT MAKE THIS "TOOL", IT WAS NOT
   HIS. IT HAD BEEN IN THE WAREHOUSE BEFORE PETITIONER WENT TO
   WORK THERE, AS PROVEN BY MR SCHLAPPI'S LETTER.

4. YES PETITIONER WAS PLACED IN ADMINISTRATIVE SEGREGATION FOR
   9 DAYS.

5. THESE CIRCUMSTANCES WERE NOT CONSIDERED SERIOUS ENOUGH TO FIRE
   PETITIONER FROM HIS JOB IN THE WAREHOUSE.

6. THEY WERE NOT CONSIDERED SERIOUS ENOUGH TO REMOVE PETITIONER
   FROM HIS STRAIGHT LIFE PROGRAM WHERE HE SHARES HIS LIFE
   EXPERIENCES WITH KIDS RANGING FROM 11 TO 17 YEARS OF AGE.

7. PETITIONER HAS BEEN INCARCERATED FOR OVER 24 YEARS. DURING
   THESE 24 YEARS, PETITIONER HAS BEEN 100% COMPLETELY FREE OF
   ANY KIND OF VIOLENCE OR SERIOUS WRITE-UPS.

PETITIONER ASKS THIS HONORABLE COURT TO SEE THIS INCIDENT
FOR WHAT IT IS. THIS "TOOL" WAS IN THE WAREHOUSE BEFORE
PETITIONER CAME TO WORK THERE. PETITIONER ADMITTED TO USING IT.

RESPECTFULLY SUBMITTED,

EXECUTED ON THIS DATE: 5/6/2008